OPINION
Plaintiffs-appellants, Adam P. Popson, Jr. ("Popson"), and his wife, Barbara Popson, appeal the jury's verdict in an action to recover damages resulting from an automobile accident caused by defendant-appellee, David S. Pennington ("Pennington"), who is insured by defendant-appellee, Nationwide Mutual Insurance Company.
On the morning of September 9, 1995, Popson was driving his Toyota 4-Runner along a highway near Xenia, Ohio. Appellee Pennington was driving his minivan behind Popson. Pennington attempted to change lanes at the same time Popson slowed down to comply with the reduced speed limit as he entered Wilmington's city limits. The right front bumper of Pennington's minivan hit the left quarter panel and rear bumper of Popson's truck. Popson was thrown forward, and his seat belt tightened as a result of the impact.
After the accident, Popson continued on to his job, in which he was self-employed as a construction subcontractor. However, Popson noticed a stinging sensation in his neck and numbness in his right arm, and his right little finger and ring finger. He went to the hospital, where he was x-rayed. Popson suffered tenderness and pain in his neck such that he did not return to work for several days.
Approximately two weeks after the accident, Popson visited Dr. Thomas Matrka. Popson had tenderness in his neck, as well as tenderness in his elbow. Dr. Matrka assessed Popson's x-ray and diagnosed Popson with a degenerative disc condition in at least two of the vertebrae of his neck, although Popson had suffered no previous pain and had no history of neck problems. Dr. Matrka also diagnosed Popson with a cervical muscle strain/sprain, or "whiplash," as a result of the accident. Dr. Matrka prescribed physical therapy and anti-inflammatory medication. Popson had three rounds of physical therapy over the course of the next two and one-half years because of episodes of recurring pain in his neck.
Appellants filed suit against appellees. At trial, Pennington admitted that his negligence had caused the accident. Popson testified that he suffered pain in his neck after the accident, for which he underwent tests and physical therapy, and that he had recurrent episodes of pain over the next two and one-half years that required additional rounds of physical therapy. Appellants introduced evidence showing Popson had medical expenses in the amount of $4,641.10 as a result of the injury to his neck. There was no real dispute about the amount of medical expenses that Popson had incurred for the tests and three rounds of physical therapy.
Popson also introduced Dr. Matrka's testimony at trial. Dr. Matrka testified that Popson's injury was a direct result of the accident, and that Popson had experienced pain as a result of the injury. Although Dr. Matrka noted that Popson had a degenerative condition, the doctor felt that Popson's symptoms were more related to the accident than the condition.
A defense expert, Dr. George Shybut, also testified regarding Popson's injuries. Dr. Shybut had also seen the x-rays taken of Popson's neck at the hospital on the day of the accident, and had observed swelling around the bones of Popson's neck that indicated torn muscle. Dr. Shybut agreed with Dr. Matrka that Popson had experienced a moderate cervical strain/sprain as a result of the accident that would have required three to six months to heal. While Dr. Shybut stated that Popson had experienced pain as a result of the injury, the doctor opined that Popson had essentially recovered from the injury after the first round of physical therapy; Popson's additional complaints of pain recurring more than six months after the accident were not associated with the cervical strain/sprain. Nonetheless, the doctor surmised that the cervical strain/sprain could have exacerbated Popson's already-existing degenerative disc disease.
The trial court instructed the jury that, in deciding the amount of the damage award, it was to consider, among other things, the nature and extent of the injury, the effect upon physical health, and the pain and suffering experienced. The court also submitted four interrogatories, which the jury answered. In Interrogatory No. 1, the jury was asked whether Pennington's negligence was the proximate cause of injury or damage to Popson. The jury answered, "Yes." Interrogatory No. 2 asked what amount of medical expenses Popson had incurred as a result of the injury. The jury assessed Popson's medical expenses at $4,575.00. In Interrogatory No. 3, the jury was asked what amount of income Popson had lost as a result of Pennington's negligence. The jury answered, "0." Interrogatory No. 4 asked the jury whether Popson had suffered permanent injury. The jury replied, "No." The jury then assessed $4,575.00, the same amount it had assessed for Popson's medical expenses, as the amount of its general verdict.
Assignment of Error No. 1:
 The trial court erred to the substantial prejudice of plaintiff in entering judgment on a jury verdict which [sic] was against the manifest weight of the evidence.
In their only assignment of error, appellants allege that the jury's award, which represented only medical expenses and excluded valuation for Popson's pain and suffering, is contrary to the manifest weight of the evidence. Appellees first respond that appellants have waived the manifest weight claim because they failed to bring the error to the trial court's attention after the jury's verdict but before the court entered judgment. Appellees then argue that appellants' assignment fails because the jury's verdict, which rounds down the medical expenses, may also include an award for pain and suffering.
Citing Woodfork v. Jones, (Feb. 21, 1997), 1997 WL 71820, at *5, Montgomery App. No. 15841, unreported, appellees initially argue that appellees' manifest weight claim is waived for failure to bring it to the trial court's attention when the error could be corrected. In Woodfork, the court construed the manifest weight claim Woodfork raised as an inconsistent verdict claim. Because the claim was truly one involving inconsistent verdicts, however, Woodfork had waived that issue by failing to object to the jury's verdict either immediately thereafter or before the court entered judgment. Id.; see, also, Juarez v. Osterman, (Aug. 12, 1999), 1999 WL 604135, Franklin App. No. 98AP-1221, unreported.
Here, appellants' assignment of error takes a hybrid approach. Appellants couch their claimed error in terms of both inconsistent verdict and manifest weight of the evidence. In Parsons v. Kelly, (Aug. 23, 1999), 1999 WL 668564, at *3, Delaware App. No. 98CAE10052, unreported, the Fifth District Court of Appeals addressed a very similar claim by using both inconsistent verdict and manifest weight analyses. This approach seems eminently reasonable given the approach appellants have taken to construct their assignment of error. Therefore, we address appellants' manifest weight claim, as well as their claim of inconsistent verdicts that encompasses appellees' waiver argument. See id.
In order to set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the elements of damage making up the plaintiff's claim. Iames v. Murphy (1995), 106 Ohio App.3d 627,631; Bailey v. Allberry (1993), 88 Ohio App.3d 432, 434-435.
A damage award representing essentially undisputed special damages, with no valuation for pain and suffering, is contrary to the manifest weight of the evidence. Hardy v. Osborn (1988),54 Ohio App.3d 98, 100; Hughes v. Koop (Feb. 18, 1997), Clermont App. No. CA96-10-081, unreported, at 3; Vieira v. Addison (Aug. 27, 1999), 1999 WL 689932, at *2-3, Lake App. No. 99-L-054, unreported. If a jury awards the amount of medical expenses as damages, it is required to award an amount for pain and suffering. See Boldt v. Kramer (May 14, 1999), 1999 WL 299888, at *4, Hamilton App. No. C-980235. Where a jury fails to award any damages for a plaintiff's uncontroverted pain and suffering, a new trial should be ordered. Ortman v. Lumbert (Apr. 14, 1997), Madison App. No. CA96-06-023, unreported, at 4-5.
Here, the jury's award is not precisely equal to medical expenses Popson claimed at trial, but is $66.10 less than those medical expenses. Consequently, appellees contend that the jury's award may conceivably include pain and suffering because it is not the exact amount of Popson's medical expenses. We cannot infer that the jury's award is intended to compensate Popson for both his medical expenses and for his pain and suffering. The jury was separately instructed that it could award medical expenses and that it could award an amount for pain and suffering. Indeed, the jury specifically identified the sum $4,575.00 as medical expenses in its answer to Interrogatory No. 2. From the slight difference between Popson's claimed medical expenses and the expenses awarded, it appears that the jury simply rounded down Popson's medical expenses, the amounts of which were not challenged by appellees, and only intended that the damage award cover those medical expenses. This award cannot be explained to include both medical expenses and pain and suffering.
Nevertheless, Popson introduced evidence that was uncontroverted by appellees showing he suffered pain in his neck as a result of the cervical strain/sprain. Not only did Popson testify that he had neck pain after the accident, but both Dr. Matrka and Dr. Shybut indicated that Popson had a cervical strain/sprain as a result of the accident that caused him pain, and for which he sought medical treatment. Although the nature and extent of the pain attributable to Popson's cervical strain/sprain instead of his degenerative condition was at issue, the uncontroverted evidence in the record indicates that Popson suffered some pain from the injury that was alleviated by physical therapy and anti-inflammatory medication. There is no evidence in the record showing that Popson did not suffer pain as a result of the cervical strain/sprain.
The only evidence in the record indicates that Popson did suffer pain as a result of the injury. Because the jury awarded Popson compensation for his medical bills, it necessarily determined that the injuries for which he sought medical treatment were proximately caused by Pennington's negligence and that medical care was reasonable and necessary. Indeed, in Interrogatory No. 1, the jury explicitly found that Popson's injury was caused by Pennington's negligence, and Pennington admitted in his testimony that the accident was a result of his negligence. The jury's award, however, completely fails to provide any valuation for Popson's pain and suffering, despite the trial court's instruction that it was to consider pain and suffering when making its award.
The purpose of a civil trial is to fully compensate the injured party for his losses. Miller v. Irvin (1988), 49 Ohio App.3d 96,98. Under these circumstances, the jury's verdict cannot be reconciled with uncontroverted evidence comprising an element of damages. The verdict does not compensate Popson for his pain and suffering. Therefore, the assignment of error is sustained. We vacate the jury's verdict as against the manifest weight of the evidence and remand for a new trial. Since we reverse the jury's verdict because it is contrary to the manifest weight of the evidence, the purported inconsistency of the verdict and the preservation of that issue for appeal are moot.
 ______________________ WALSH, J.
POWELL, P.J., and VALEN, J., concur.